IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| EL COMANDANTE MANAGEMENT | : | Case No. 04-10938 |
| COMPANY, LLC, et al., | : | Chapter 11 |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| EL COMANDANTE MANAGEMENT | : | |
| CO., LLC., HOUSING DEVELOPMENT | : | |
| ASSOCIATES, S.E., and EL COMANDANTE | : | |
| CAPITAL CORP. | : | |
| | : | |
| Plaintiffs, | : | Adv. Proc. No. 05-0153 |
| | : | |
| v. | : | |
| | : | |
| CAMARERO RACE TRACK, CORP. | : | |
| ERVIN G. RODRIGUEZ-VELEZ, | : | |
| ERNESTO ACOSTA-MATOS, | : | |
| LUISETTE CABANAS-COLON | : | |
| WILFREDO ALVAREZ-CINTRON | : | |
| LIONEL MULLER-FERNANDEZ | : | |
| JOHN DOE, RICHARD ROE | : | |
| PETER MOE, UNKNOWN DEFENDANTS | : | |
| | : | |
| Defendants. | : | |
| | : | |

**OPINION AND ORDER**

This case is before the court on defendants' request to strike the jury demand by

plaintiffs in their amended complaint on the grounds that debtors/plaintiffs "implicitly

waived any right to a jury trial" by filing a voluntary bankruptcy petition. Defendants

further argue that the claims in plaintiffs' complaint are "inextricably intertwined with the

AO 72
(Rev. 8/82)

public right to hold a license to operate a racetrack." Plaintiffs oppose alleging that they are entitled to a jury trial pursuant to the Seventh Amendment of the United States Constitution and that they did not subject their claims to the equitable jurisdiction of the bankruptcy court by filing a bankruptcy petition. Plaintiffs further argue that the joinder of equitable claims does not deprive a party of its right to a jury trial.

**Procedural Background**

The court held a status conference on July 31, 2006. The court expressed to the parties that while considering defendants' motion to dismiss and plaintiffs' opposition, it became aware that the complaint includes claims that may be non core, and that plaintiffs demand trial by jury. Under 11 USC § 157(c)(1) a bankruptcy judge may hear non core matters but may only submit proposed findings of fact and conclusions of law to the district court; and under 11 USC § 157(e), if there is a right to a jury trial, the bankruptcy judge may conduct the jury trial only if so designated by the district court and upon the express consent of all the parties. The district court has designated and authorized bankruptcy judges in the district of Puerto Rico to hold jury trials. However, as of July 31, 2006, there was no express consent by all the parties for this judge to hold the jury trial.

In view of the above, the court directed the parties to meet and inform the court whether they consented to hear a jury trial in the claims so triable. Defendants argue in their Motion in Compliance with Court Order and to Strike Debtors' Jury Demand ("Motion to Strike"), filed on August 7, 2006 (Docket No. 56), and in their Reply filed on August 28, 2006 (Docket No. 64), that debtors, by voluntarily seeking the protection of

2

AO 72
(Rev. 8/82)

the bankruptcy court, implicitly waived any right to a jury trial. Citing to the Second Circuit case of Germain v. Connecticut National Bank, 988 F.2d 1323 at 1331 (2d Cir. 1993), Defendants also contend that the actions of civil conspiracy, defamation and tortious interference "are inextricably intertwined with the 'public right' to hold a license to operate a racetrack....[t]hus, they are not necessarily invoking a private right subject to the Seventh Amendment protection". Motion to Strike at page 10. Finally, Defendants allege that because a violation of the automatic stay is raised ("clearly a core issue"), Plaintiffs have converted their legal claims into equitable ones. Motion to Strike at page 11.

Conversely, in their Opposition to Motion in Compliance with Order and to Strike Debtors Jury Demand filed on August 17, 2006 (Docket No. 60), and their Sur-Reply filed on September 14, 2006 (Docket No. 66), Plaintiffs argue that they did not waive their right to a jury trial when they filed their bankruptcy petition.

In their Sur-Reply Plaintiffs consented to have the bankruptcy court hear this jury trial, however, Defendants have not expressly consented to this bankruptcy judge hearing claims that may be triable by jury. Thus, if there is a right to jury trial; this bankruptcy judge may not hear it. Considerations of judicial economy and efficiency warrant the withdrawal of the reference so that a jury trial may be held in the district court.

**The Complaint**

On June 24, 2005, El Comandante Management Company LLC, Housing Development Associates, S.E. and El Comandante Capital Corp (the "Plaintiffs") filed this adversary proceeding against Camarero Race Track, Corp.("Camarero"), Ervin G.

3

AO 72
(Rev. 8/82)

Rodriguez-Velez, Ernesto Acosta-Matos, Luisette Cabanas-Colon, Wilfredo Alvarez-Cintron, Lionel Muller-Fernandez, John Doe, Richard Roe, Peter Moe, unknown defendants (the "Defendants"). Camarero is the corporation that prevailed in the auction held by Wells Fargo Bank, National Association, in its capacity as creditor and indenture trustee, and as proponent of the secured creditor plan. The individual defendants are officers and/or shareholders of Camarero.

On December 8, 2005 Plaintiffs filed an Amended Complaint including the following claims for relief[1]: first claim for relief: violation of automatic stay for having tried to deprive debtors of one of its most valuable asset: the license to operate the racetrack of El Comandante; second claim for relief: violation of automatic stay for having tried to have the government of Puerto Rico expropriate debtors' real property in order to obtain the license to operate the racetrack; third claim for relief: infringement of Puerto Rico's Anti-Trust Law; fifth[2] claim for relief: tortious interference with business relations through libelous statements, slander and conspiratorial acts; sixth claim for relief: violation of the automatic stay.

Plaintiffs allege that Defendants conspired to destroy Plaintiffs' financial stability in order to be able to purchase Plaintiffs assets well under value; the license to operate a racetrack and the license to operate electronic video game machines. Plaintiffs further allege that Defendants made knowingly false and malicious statements to various

---

[1] Plaintiffs identified them as causes of action, however, Fed R Civ P 8 made applicable here through Fed R Bankr P 7008 designates these as claims for relief.

[2] The fourth claim for relief was deleted in the Amended Complaint, and the fifth and sixth were not renumbered.

AO 72
(Rev. 8/82)

instrumentalities of the government of Puerto Rico, to the press, and through the press, to the public. Specifically, Plaintiffs state that Defendants appeared before the Puerto Rico Racing Board (Junta Hipica) and supplied knowingly false and slanderous information in order to harm their reputation so that the license to operate the racetrack would be taken from them. Plaintiffs allege that for two years Defendants with other horse owners had been negotiating with Mr. Wilson to acquire the racetrack. "With these negotiations defendants were clearly interfering with the existing contract between plaintiff and Codere Puerto Rico [an entity involved in the business of operating electronic video game machine system]." Amended Complaint at page 7. After the bankruptcy petition was filed, Plaintiffs allege that Defendants, acting in concert, initiated proceedings before the Puerto Rico Racing Board to have Plaintiffs license taken away and filed a petition requesting a license to operate a racetrack to be issued in their favor. "The only racetrack that exists in Puerto Rico is El Comandante. Obviously defendants by fraudulent conduct have staged a hostile takeover of Plaintiffs' assets and business." Amended Complaint at page 8. Plaintiffs allege that if Defendants obtain the license Plaintiffs will lose the operation of the racetrack and will not be able to reorganize its finances, therefore, Defendants have violated the automatic stay by "interfering with Plaintiffs plan of recovery". Amended Complaint at page 9.

The complaint provides that as part of the conspiracy Camarero withdrew their request for authorization to the implementation of the electronic video game systems and promoted before the Puerto Rico Legislature that the law that enables said system be revoked, knowing that the system is instrumental for the viability of the agreement

AO 72
(Rev. 8/82)

between Debtors and Codere.

The complaint prays for money damages and injunctive relief. The alleged underlying facts which serve as the basis for this complaint took place both before and after the petition date.

Plaintiffs demanded the right to a trial by jury in the complaint.

### Discussion

Section 157(e) of title 28, United States Code, provides as follows:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and **with the express consent of all the parties.**

28 USC § 157(e)(emphasis ours). The analysis of § 157(e) is three-pronged; first, whether there is a right to a jury trial; second, whether the court has designated the bankruptcy judge to hear jury trials; and, third, whether the parties have expressly consented that the claims triable by jury be heard by the bankruptcy judge. The second and third prongs are not in controversy in this case. The bankruptcy judge has been designated to hear jury trials and all parties have not expressly consented that the bankruptcy judge conduct a jury trial in this adversary proceeding. Therefore, the critical issue is whether or not there is a right to jury trial. If there is no right to jury trial, this court must decide the motion to dismiss and hear the trial on the merits, if the action is not dismissed. If there is a right to jury trial, reference should be withdrawn to the district court for judicial economy and efficiency considerations.

6

AO 72
(Rev. 8/82)

*Jury Trials*

The Seventh Amendment of the United States Constitution provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. Amend. VII. The Supreme Court has interpreted the phrase "Suits at common law" to refer to "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 at 41, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (citation omitted). The analysis applied by the Granfinanciera Court consisted, first, in determining whether the action would be have been tried in a court of law or in a court of equity of 18th Century England, before these courts were merged, and second, whether the remedy sought is legal or equitable in nature. Id. at 42. "If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." Id. After concluding that a fraudulent conveyance action was legal in nature and that the remedy sought (a money judgment) was not equitable, the Granfinanciera Court explained that the Seventh Amendment does not afford the right to a jury trial on all legal claims.

> If a claim that is legal in nature asserts a public right, ..., then the Seventh Amendment does not entitle the parties to a jury trial if Congress assigns its adjudication to an administrative agency or specialized court of equity. The Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of "private right".

Id. The Court rejected the position that a matter of 'public rights' must be a matter that arises between the government and others, that is, the Federal Government need not be a party to the case for it to involve public rights. Id. at 54. Expanding on the definition of "public right", the Court provided as follows,

> [t]he crucial question, in cases not involving the Federal Government, is whether Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, has created a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary. ... If a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court. If the right is legal in nature, then it carries with it the Seventh Amendment's guarantee of a jury trial.

Id. The Court explained that: "[i]n Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 at 71, 102 S.Ct. 2858 at 2871, 73 L.Ed.2d 598 (1982), the plurality noted that the restructuring of debtor-creditor relations in bankruptcy may well be a public right. But the plurality also emphasized that state-law causes of action for breach of contract or warranty are paradigmatic private rights, even when asserted by an insolvent corporation in the midst of Chapter 11 reorganization proceedings." Granfinanciera, 492 U.S. at 56. For example, a fraudulent conveyance action is generally a legal action which does not involve a public right. However, a debtor or creditor with an otherwise valid right to a jury may lose such right through conversion of his legal claim into an equitable claim if the proceeding invokes the process of allowance or disallowance of claims; or if the dispute is integral to the restructuring of the debtor-creditor relationship within the bankruptcy context. Id. at 58 - 59.

8

AO 72
(Rev. 8/82)

The Granfinanciera Court concluded that a defendant who had not filed a proof of claim was entitled to a jury trial under the Seventh Amendment in an action brought by a bankruptcy trustee to recover a money judgment based on a fraudulent conveyance. In such case the fraudulent conveyance action does not arise as part of the process of allowance and disallowance of claims, nor is that action integral to the restructuring of debtor-creditor relations because a proof of claim was never filed and thus, the defendant never became subject to the equitable powers of the bankruptcy court. Id. at 58-59. The Court decided there was a right to jury trial but declined to decide if the bankruptcy courts may conduct such a jury trial.

Conversely, a preference action against a creditor who filed a proof of claim becomes part of the allowance and disallowance of claims process which is triable only in equity. Lagencamp v. Culp, 498 U.S. 42 at 44, 111 S.Ct. 330 at 331, 112L.Ed.2d 343. The preference action must be resolved before the court determines the allowed amount of the creditor's claim, thereby becoming part of the process of allowance and disallowance of claims; the claim may neither be determined nor allowed until the creditor disgorges the alleged voidable preference. Katchen v. Landy, 382 U.S. 323, 336, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966).

In the present case the Defendants' argument is that by filing a bankruptcy petition a debtor/plaintiff waives its right to a jury trial by submitting itself to the equity jurisdiction of the bankruptcy court. Defendants, however, fail to show how the actions set forth herein, arise as part of the process of allowance and disallowance of claims, or are actions integral to the restructuring of debtor-creditor relations, thereby triggering the

9

AO 72
(Rev. 8/82)

equity powers of the bankruptcy court.

This court in In re Scotland Guard Service, Inc., 179 B.R. 764 (Bankr. D.P.R.), cited with approval the opinion by Professor David G. Epstein that "one who has filed a voluntary petition is never entitled to a jury trial in that court." 3 David G. Epstein, Bankruptcy, § 12-14, p. 231 (West 1992). Further analysis and caselaw have moved this court to modify and limit its prior statement. A debtor by filing a bankruptcy petition subjects itself to the equitable jurisdiction of the bankruptcy court over the allowance and disallowance of claims, and consequently, waives its right to a jury trial, even for claims of a legal nature, to the extent that they involve the allowance and disallowance of claims. In re Tanzi, 2006 WL 2927660 (October 12, 2006 W.D. Wash.); In re Gulf Coast Left Truck Company, Inc., 319 B.R. 20 (Bankr. M.D.Fla 2004); In re Charlotte Commercial Group, Inc., 288 B.R. 715 (Bankr. M.D.N.C. 2003); In re Romar International Georgia, Inc., 198 B.R. 407 (Bankr. M.D.Ga. 1996); In re Aaron Gleich, Inc., 200 B.R. 464 (Bankr. D.Me. 1996).

In the case of Germain v. Connecticut National Bank, 988 F.2d 1323 (2d Cir. 1993), the Second Circuit Court of Appeals held that a chapter 7 trustee is entitled to a jury trial for claims legal in nature, irrespective of whether or not the claims arose post petition. Id. at 1325. In that case the chapter 7 trustee, Mr. Germain, filed claims of tortious interference with debtor's business, coercion and duress, breach of the contractual duty of good faith, unfair or deceptive business practices and misrepresentation against Connecticut National Bank, a creditor of the estate that had filed a proof of claim. Id. at 1326. In explaining its ruling that the trustee's lender

10

liability action would augment the estate but would have no effect on the allowance of the creditor's claim, thus, cannot be part of the claims-allowance process, the Germain, court provided that,

> actions that are normally legal cannot be "magically converted into equitable issues" merely because they arise out of equitable proceedings. *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). This is because nothing has changed their essential character. A different result might adhere if the action had become part of the claims-allowance process, because determining pro rata distribution is characteristically equitable. (Citation omitted) An action that bears directly on the allowance of a claim is integrally related to the equitable reordering of debtor-creditor and creditor-creditor relations. If an equitable reordering cannot be accomplished without resolution of what would otherwise be a legal dispute, then that dispute becomes an essential element of the broader equitable controversy. As discussed in section I-B above, however, the Trustee's action here is not part of the claims-allowance process and is not integral to the reordering of relations among the parties. Consequently, the Trustee's action retains its legal character.

Id. at 1329. The court concluded that under those circumstances the trustee was entitled to a trial by jury. The court explained that,

> neither precedent nor logic supports the proposition that either the creditor or the debtor automatically waives all right to a jury trial whenever a proof of claim is filed. For a waiver to occur, the dispute must be part of the claims-allowance process or affect the hierarchical reordering of creditors' claims. Even there the right to a jury trial is lost not so much because it is waived, but because the legal dispute has been transformed into an equitable issue.

Id. at 1330.

The Fifth Circuit Court of Appeals in the case of In re Jensen, 946 F.2d 369 (5th Cir. 1991) interpreted similarly the Granfinanciera case and concluded that debtors had a right to a jury trial on their state law suit of breach of fiduciary duty, fraud, tortious interference and conspiracy, despite the fact that they had filed a bankruptcy petition. After stating that the claims of tortious interference and civil conspiracy are legal in

11

nature and thus triable before a jury in a court of law, the Jensen court reasoned as follows,

> debtors' claims do not arise as part of the process of allowance and disallowance of claims, [n]or are they integral to the restructuring of debtor-creditor relations. Rather they are essentially claims brought by the debtor (in possession) against non-creditor third parties to augment the bankruptcy estate. Under these circumstances we are unable to conclude that the debtor's petition for bankruptcy subjected his claims to the equitable jurisdiction of the bankruptcy court.

Id. at 374.

In support of their position that debtors waived their right to a jury trial when they filed their bankruptcy petition, Defendants cite In re Hallahan, 936 F.2d 1496 (7th Cir. 1991), while conceding that the First Circuit Court of Appeals has not addressed the issue. Motion to Strike, Dkt. 56 at page 6. The Hallahan case involved a willfull breach of a non compete covenant in an employment contract signed by Mr. Hallahan as the employee, who later filed a bankruptcy petition. The former employer filed a proof of claim and filed a non dischargeability complaint pursuant to § 523(a)(6) for willfull and malicious injury by the debtor to another entity. Debtor never contested the willfull breach of the contract, instead, the issues presented were: (1) whether the restrictive covenant in Hallahan's contract was unenforceable under Missouri law; (2) whether damages were sufficiently proven; and (3) whether the bankruptcy court erred in denying Hallahan's request for a jury trial. The Hallahan court ruled that a debtor did not have a right to a jury trial on a nondischargeability action because it is a proceeding that is historically equitable in nature for which there was no entitlement to a jury trial in the courts of England prior to the merger of law and equity. Furthermore, the Hallahan court

12

goes on to say that even if the claim had been legal in nature, debtor would not have a right to a jury trial because by filing the bankruptcy petition he submitted to the jurisdiction of the bankruptcy court.

This court believes that the facts in In re Hallahan are distinguishable from the case at bar. In the instant case there is no dispute that the causes of action of civil conspiracy, defamation, infringement of Puerto Rico's Anti-Trust Law and tortious interference with business relations are legal in nature. The issue is whether the bankruptcy filing converted these actions to equitable ones without the right to a jury trial. The Hallahan court seemed resentful to the injustice that would result from granting a voluntary debtor (a defendant in an adversary proceeding) the right to a jury trial, when, after the filing of the petition, the creditor (the former employer prejudiced by debtors' willful breach of contract), who is forced to recover its claim in bankruptcy court, loses its right to a jury trial by filing a proof of claim.

> After Hallahan filed for bankruptcy, Ozark was prevented by the automatic stay provisions of the Code, 11 U.S.C. § 362, from commencing or continuing any litigation outside of the bankruptcy case to recover its claim. Ozark thus was forced to file a proof of claim and initiate a dischargeability proceeding in bankruptcy court. Under *Granfinanciera,* Ozark's filing stripped it of any right to jury trial it might otherwise have claimed. It would be anomalous to hold that Hallahan could yet obtain a jury trial in bankruptcy court in these circumstances. Debtors then would be able to block their creditors' access to a jury trial without compromising their own ability to demand a jury in their preferred forum.

Hallahan, 936 F. 2d at 1505, 1506. The Hallahan court concluded that the debtor, who voluntarily filed a bankruptcy petition, loses the right to a jury trial, just as a creditor, because of the filing of the proof of claim, loses the right for a jury trial. However, the Hallahan case involved a dischargeability suit that was an integral part of the claims-

13

allowance process, which is not the case here.

Camarero became a creditor of the debtors in June 2006, that is, almost twenty months after the petition date, when Nicolás Carrillo Correa, Inc., transferred its claim in the amount of $930.00 for consideration of payment of $210.00. The claim of Nicolás Carrillo Correa, Inc. was for goods sold. Defendants are creditors, however, the actions brought forth in this complaint are completely unrelated to their acquired claim, and the actions did not become part of the claims-allowance process triable in equity. See, WSC, Inc. v. Home Depot (In re WSC, Inc.) 286 B.R. 321 (Bankr. M.D.Tenn, 2002) ("It is the fact that the Trustee's fraudulent conveyance counterclaim is in reality an objection to the allowance of [creditor's] secured claim which strips the Trustee of a jury trial right. The Trustee's counterclaim is a part of the claims allowance process which is within the Court's equity power. The focus of the Supreme Court is on the nature of the action before the court and whether the action is a part of the claims allowance and debtor-creditor restructuring process.")

This court disagrees that the Germain case lends support to the proposition that the causes of action set forth in this adversary proceeding "are inextricably intertwined with the 'public right' to hold a license to operate a racetrack....[t]hus, they are not necessarily invoking a private right subject to the Seventh Amendment protection". Motion to Strike at page 10. In Germain, the bank/defendant argued that the actions involved a public right because its adjudication was assigned to a specialized court of equity, the bankruptcy court. The court rejected the defendant's argument by stating that in order to deprive a party of its fundamental right to a jury trial the matter must have a

14

'close nexus to any statutory public right'.  Germain, 988 F.2d at 1331.  "Indeed, his [the trustee's] state law causes of action are paradigmatic private rights, even when asserted by an insolvent corporation in the midst of Chapter 11 reorganization proceedings." Id. (citation omitted)

The causes of action raised in the instant adversary proceeding involve the alleged violation of Plaintiff's private rights by Defendants.  Defamation, tortious interference, civil conspiracy are, in the words of the Germain court, paradigmatic private rights[3]; the close nexus to a statutory public right that would warrant this court to deprive the Plaintiffs of their jury trial right, has not been established.  The fact that Plaintiffs allegations, if true, constitute actions that were carried out in order to facilitate the Racing Board's determination to remove the debtors' license to operate a racetrack, does not convert the Plaintiff's 'private right' into a public right';  The nexus is not sufficiently intertwined.

Lastly, Defendants argue that Plaintiffs included in the complaint a claim for violation of the automatic stay which does involve a 'public right'.  "[T]he joinder of equitable claims with legal claims does not deprive a party of the right to a jury trial on the legal claims.  In re Jensen, 946 F.2d 369 (5th Cir. 1991).  That is, if some claims are legal, a party will not be denied a jury trial just because other claims arising out of the same facts are equitable.  Germain, F.2d at 1329 citing , Curtis v. Loether, 415 U.S. 189,

---

[3]   The Germain court cited to the Fifth Circuit case of In re Jensen, 946 F.2d 369 (5th Cir. 1991) in stating that claims analogous to tortious interference were historically tried in common law courts.  Germain, 988 F.2d at 1328.

15

196 n. 11, 94 S.Ct. 1005, 1009, n. 11, 39 L.Ed.2d 260 (1974); *Song v. Ives Laboratories,* 957 F.2d 1041, 1048 (2d Cir.1992). In a situation where legal and equitable claims are combined in an action, the action must be structured and tried so that the jury trial rights of the legal claims are preserved. WSC, Inc. v. Home Depot (In re WSC, Inc.), 286 B.R. 321 (Bankr. M.D.Tenn., 2002). If the legal claims and the equitable claims have common issues of fact, the legal claims must be decided first by the jury so that the jury trial right is not foreclosed with a prior determination of the equitable claim. Id.

In view of the foregoing this court concludes that Plaintiffs have a Seventh Amendment right to a jury trial.

*Core v. Non-core matters*

Core proceedings are those involving matters arising under title 11 or arising in a case under title 11 of the United States Code; that is, they would not exist outside of bankruptcy. Core matters, as inherently bankruptcy matters, can be determined by bankruptcy judges. Id. The Judicial Code sets forth a non-exclusive list of core matters, including "matters concerning the administration of the estate". 28 U.S.C. S157(b)(2) (1984).

Non-core related proceedings are those which are related to cases under title 11. As to this type of proceeding, a bankruptcy judge "shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge ...." 28 U.S.C. § 157(c)(1). The district court conducts a de novo review. In re Sheridan, 362 F.3d 96, 100 (1st Cir. 2004). However, a bankruptcy judge may enter final orders and judgments concerning non-core but related matters if all

16

AO 72
(Rev. 8/82)

parties to the proceeding have consented. § 157(c)(2); In re G.S.F. Corporation, 938 F.2d 1467, 1476 (1st Cir. 1991). Such a consent has not been expressly given by all parties.

A determination of whether a controversy is core or non-core depends upon its relation to the basic functions of the bankruptcy court and not on the federal or state basis for the claim. In re Arnold Print Works, Inc., 815 F.2d 165, 169 (1st Cir. 1987). If the proceeding, by its nature, arises only within the bankruptcy context because it involves a right created by federal bankruptcy law, then it is a core proceeding. In re Wood, 825 F.2d 90, 97 (5th Cir. 1987). If an action would survive outside of bankruptcy, and in the absence of bankruptcy would have been initiated in a state or a district court, then it clearly involves a non-core matter. 1 Lawrence P. King et al., Collier on Bankruptcy P3.01[1][c][iv] at 3-27 (15th ed. 1991), citing In re Colorado Energy Supply, Inc., 728 F.2d 1283 (10th Cir. 1984).

The non-core related actions referred to by 28 U.S.C. § 157(a) are those that "potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankruptcy estate." In re G.S.F. Corporation, 938 F.2d at 1475, citing In re Smith, 866 F.2d 576, 580 (3rd Cir. 1989). If the determination of the case could have an effect on the bankruptcy estate, it is a related matter. Id. The intent is to enable bankruptcy courts "to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates." In re Boston Regional Medical Center, Inc., 410 F.3d 100, 105 (1st Cir. 2005).

The court finds that violations of the automatic stay are core proceedings,

17

however, the remaining causes of action are non-core related proceedings. The causes of action of this adversary proceeding do not arise from the bankruptcy proceedings, although their determination may affect the bankruptcy estate. They exist independently of the bankruptcy and are basically the same as the actions brought before the local court. Although some of the actions alleged by the plaintiffs occurred after the filing of the petition, they are substantially similar to those which occurred prior thereto; thus, this cannot be considered a post-petition claim. If the court were to hear this matter it would be limited to submitting proposed findings of fact and conclusions of law to the district court for *de novo* review.[4]

*Withdrawal of Reference*

Section 157(d) of the Judicial Code provides in part that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 USC § 157(d). In determining whether cause exists to withdraw reference of a case, courts have examined the following factors: judicial economy, whether withdrawal will promote uniformity of

_____

[4] Section 157(c)(1) of Title 28 of the United States Code provides that

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 USC § 157(c)(1).

18

bankruptcy administration, reduction of forum shopping and confusion, conservation of debtor and creditor resources, expedition of the bankruptcy process and whether jury trial has been requested. Holland America Insurance Co v. Succession of Roy, 777 F.2d 992 at 999 (5th Cir. 1985) The analysis of judicial economy depends largely on whether the claims asserted are core or non-core; "it is upon this issue that questions of efficiency and uniformity will turn." In re Orion Pictures Corp, 4 F.3d 1101 (2d Cir. 1993). "If a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference." Id.

AO 72
(Rev. 8/82)

## Conclusion

In view of the foregoing this court finds that Plaintiffs have a right to a jury trial in the non-core related claims for relief. Therefore, cause exists under 11 USC § 157(d) for its withdrawal of reference. This court hereby recommends that reference be withdrawn in this adversary proceeding. The Clerk of the Bankruptcy Court shall certify to the United States District Court for the District of Puerto Rico its recommendation for the withdrawal of reference of the present case.

SO ORDERED.

In San Juan, Puerto Rico, this 4th day of December 2006.

ENRIQUE S. LAMOUTTE
U. S. Bankruptcy Judge

20

AO 72
(Rev. 8/82)